**UNITED STATES of America,**
**Appellant**

**v.**

**Abd Al Rahim Hussayn Muhammad AL-NASHIRI, Appellee**

**CMCR 14-001**

United States Court of Military Commission Review.

June 9, 2016

*Colonel James L. Pohl*, JA, U.S. Army, and *Colonel Vance H. Spath*, JA, U.S. Air Force, military commission judges.

Brigadier General Mark S. Martins, U.S. Army, argued the cause for appellant. With him on the briefs was Danielle S. Tarin.

Richard Kammen argued the cause for appellee. With him on the briefs were Commander Brian L. Mizer, JAGC, U.S. Navy, and Lieutenant Commander Jennifer Pollio, JAGC, U.S. Navy.

BEFORE THE COURT Mitchell, Presiding Judge, Silliman, Deputy Chief Judge, and King, Appellate Judge

## PUBLISHED OPINION OF THE COURT

SILLIMAN, Deputy Chief Judge:

On August 11, 2014, the military commission judge (military judge) dismissed Specification 2 of Charge IV (Terrorism), Charge VII (Attacking Civilians), Charge VIII (Attacking Civilian Objects), and Charge IX (Hijacking or Hazarding a Vessel or Aircraft) ("the charges") after appellee moved to dismiss the charges for lack of jurisdiction. App. 241-45, *see id.* at 465-71. Appellant filed an interlocutory appeal of that ruling. We reverse the military judge's decision and reinstate the charges.

**Statement of the Case**

On August 18, 2014, appellant filed a notice of interlocutory appeal under 10 U.S.C. § 950d(a)(1) of the decision to dismiss the charges. On October 10, 2014, we held that the appeal was timely filed under 10 U.S.C. § 950d(e). *United States v. Al-Nashiri,* 62 F.Supp.3d 1305 (USCMCR 2014) (per curiam). On October 14, 2014, appellee filed a petition for a writ of mandamus and prohibition in the Court of Appeals for the District of Columbia Circuit seeking disqualification of the two military appellate judges then on the panel assigned to hear the appeal. Appellee contended their assignment by the Secretary of Defense to the USCMCR violated the Commander-in-Chief Clause and the Appointments Clause of the U.S. Constitution. *See* Appellee's Pet. for Writ of Man-

damus & Prohibition, *In re Al-Nashiri,* No. 14-1203 (D.C.Cir. Oct. 14, 2014). On that same day, appellee filed a motion in our court urging that we stay further proceedings in his case until such time as the Court of Appeals took action on his petition. On October 14, 2014, we denied appellee's motion to stay proceedings and on October 16, 2014, ordered oral argument on appellant's interlocutory appeal to be held on November 13, 2014. However, on the eve of the oral argument, the Court of Appeals granted a stay in the proceedings for the purpose of giving it sufficient opportunity to consider appellee's mandamus petition. Order, *In re Al-Nashiri,* No. 14-1203 (D.C.Cir. Nov. 12, 2014).

On June 23, 2015, the Court of Appeals for the District of Columbia Circuit denied the appellee's mandamus petition, remanded the case back to our court, and lifted its stay on our proceedings. *In re Al-Nashiri,* 791 F.3d 71 (D.C.Cir.2015); Order, *In re Al-Nashiri,* 791 F.3d 71 (D.C.Cir.2015). On June 26, 2015, we granted appellant's unopposed request to hold this case in abeyance pending possible presidential nomination and Senate confirmation of the military appellate judges. *See In re Al-Nashiri,* 791 F.3d at 86 (suggesting such nomination and confirmation would "put to rest any Appointments Clause questions"). On March 14, 2016, the Senate received the nominations of Judges Mitchell and King to our court.[1] The Senate confirmed Judges Mitchell and King on April 28, 2016,[2] and they were sworn as USCMCR judges on May 2, 2016. On May 18, 2016, we lifted our stay of the proceedings and appellant's interlocutory appeal, and on June 2, 2016, we heard oral argument.

---

1. 162 Cong. Rec. S1474 (daily ed. Mar. 14, 2016) (indicating receipt of President's nominations of Colonel Martin T. Mitchell, U.S. Air Force, and Captain Donald C. King, U.S. Navy, as appellate military judges on the United States Court of Military Commission Review).

2. U.S. Cong., Nominations of 114th Cong., PN 1219, https://www.congress.gov/nomination/114th-congress/1219 (Judge Mitchell), and PN 1224, https://www.congress.gov/nomination/114th-congress/1224 (Judge King).

**Issue Presented**

Appellant appeals the military judge's pretrial decision to dismiss the charges because of a lack of subject-matter jurisdiction; that is, the military judge found that the government failed to establish that the offenses were committed in the context of and associated with hostilities. We have jurisdiction because the military judge's ruling "terminates proceedings of the military commission with respect to a charge or specification." Rule for Military Commissions (R.M.C.) 908(a)(1), 2012 Manual for Military Commissions (M.M.C.).

Military commission jurisdiction has two components, personal and subject matter. Personal jurisdiction relates to whether an accused is an alien unprivileged enemy belligerent (AUEB)[3] and therefore a *person* subject to the Military Commissions Act (MCA) who may be prosecuted by a military commission, *see* 10 U.S.C. §§ 948d, 948a(7); whereas subject-matter jurisdiction relates to whether the charged *offenses* are made punishable in MCA Subchapter VIII, *see* 10 U.S.C. §§ 948d, 950p-t. The parties disagree as to which was the predicate for the military judge's dismissal of the charges.

Appellee argues the military judge did not abuse his discretion when he dismissed the charges and urges us to dismiss the appellant's appeal. *See* Appellee's Br. (Oct. 14, 2014); Appellee's Reply Br. (Oct. 24, 2014). Appellee contends that the basis of the dismissal was subject-matter jurisdiction and defines the scope of the issue to be "the ostensible nexus of the bombing of the *MV Limburg* to United States interests and whether that bombing fell within the scope of 'hostilities' against the United States within the meaning of the Military Commissions Act and the law · of war." Appellee's Br. 17 n.55. Appellant argues three points. First, the military judge "concluded that the government failed to request an evidentiary hearing or otherwise prove specific facts to support its assertion of jurisdiction, one of which was that hostilities, as that term is defined in 10 U.S.C. § 948a(9), against the United States existed." Appellant's Br. 12 (Sept. 29, 2014) (internal quotation marks and citation omitted). Second, appellant asserts that "[a]lthough unclear, [the military judge] also suggested he dismissed the charges, at least in part, because he concluded the government failed to establish personal jurisdiction." *Id.* Appellant argues that it· has previously offered and continues to welcome an evidentiary hearing to establish personal jurisdiction. *See id.* at 37–40. Third, appellant contends that, with regard to subject-matter jurisdiction, the military judge improperly required appellant to prove an element of the charges, i.e., that the offenses were committed in the context of and associated with hostilities, at a pretrial session. *See id.* at 20–24.

Based upon our review of the record, the parties' briefs, and the applicable case law we conclude that the military judge improperly required appellant to offer pretrial evidence to establish that the offenses were committed in the context of and associated with hostilities and thus erred when he dismissed the affected charges.

**The Military Judge's Findings**

■ The military judge found that appellant proffered the existence of eighteen facts to establish jurisdiction, without of-

**3.** "The term 'alien' means an individual who is not a citizen of the United States." 10 U.S.C. § 948a(1). "The term 'unprivileged enemy belligerent' means an individual (other than a privileged belligerent) who—(A) has engaged in hostilities against the United States or its coalition partners; (B) has purposefully and materially supported hostilities against the United States or its coalition partners; or (C) was a part of al Qaeda at the time of the alleged offense under this chapter." *Id.* at § 948a(7).

fering any evidence in support of the proffer, and appellee acknowledged five facts that tended to support jurisdiction. *See* App. 243-44. The military judge concluded:

> The Commission need not reach any conclusions of law based on both parties' legal arguments raised in their written filings and oral arguments. While the

facts argued by the Prosecution may be easily susceptible of proof, the Prosecution failed to request an evidentiary hearing and offer any documentary or testimonial evidence into the record to factually support their assertion of jurisdiction as to the charges and specification involving the MV Limburg.[4] The

4. After appellee objected to the lack of supporting facts presented at a pretrial hearing, appellant proffered facts to the military judge, and they had the following exchange about whether the information in the briefs and arguments would be accepted as the factual basis for the nexus to the conflict subject-matter jurisdiction issue:

> Military Judge: Are you telling me this is the—that there needs to be evidence of the nexus or do I—I mean, I don't see any evidentiary hearing here.
>
> Assistant Trial Counsel: Well, Your Honor, the defense has been talking about the absence of any connection to the United States. It's pretty clear that it's evident that shipping and oil tankers implicate shipping interests. This is just a bit more clarification, but geography—you know, geography itself is helpful here.
>
> Military Judge: No, I'm back—the defense has challenged—made a jurisdictional challenge, okay? If you say as a matter of law there's jurisdiction and you decide it on the pleadings and the argument—and I'm with you on that, I mean, as a procedure. But if you say it's based on the status of oil shipping or other evidence or what happened in 2002 as far as how much oil came to the United States, that's evidence. And you're not in a position—you're not testifying.
>
> Assistant Trial Counsel: Yes, Your Honor.
>
> Military Judge: So I'm saying if your argument is that this is dependent upon this evidentiary predicate, where is that?
>
> Assistant Trial Counsel: Well, Your Honor, a couple of points. One would be—and this was discussed earlier as well as in the discussions on Appellate Exhibit 168, which was basically that there would be an offer of evidence to the panel in the context of hostilities, and also because it's on the charge sheet to consider this type of evidence. So, for example, the commission en-

> tertained the proffer from the government then about the effect on oil prices. That's something the defense mentioned in their motion. That's certainly something that the government would like to respond further to, since it's factual and the court had considered that, and that was part of the earlier discussion. The issues the defense raises about the absence of evidence, if we're talking about the protective principle by analogy and how it shows that the exercise of jurisdiction by a military commission is valid and lawful under the circumstances, to the extent that that is important for the Court's consideration in that analogy, the government would like the ability to respond here. So we'd like to offer just a few points that aren't really technical or hypercomplicated, and some of them, quite evident, simply based on facts that are readily available that will help the commission decide.
>
> Military Judge: So let me see if I got this correct. You want to give me facts to consider on this motion?
>
> Assistant Trial Counsel: Well, Your Honor, if you believe it would be helpful to know what the nexus is, since the defense has raised the question and stated there's no nexus at all, then the government can give you that information.
>
> Military Judge: It doesn't work that way. I don't tell you what I think I need for the government to prevail or for the defense to prevail. You got their motion. You're arguing the government's position on it. You take whatever—you present whatever you want to present. I mean, as far as I am seeing right now, the government's presentation is that this is a legal issue and can be decided on the briefs and the argument. Got it. But I'm not going to tell you what I think you or the defense or anybody should do.

Prosecution has thus failed to meet its burden of persuasion in this interlocutory matter. (*See* R.M.C. 905c(2)(B).) Accordingly, AE 168 and AE 241 are **GRANTED** [and the charges are dismissed].

App. 245.

After granting the government's subsequent motion for reconsideration of his dismissal of the charges, the military judge ruled that the charges remained dismissed without prejudice, and further explained his decision to dismiss the charges as follows:

> [T]he Prosecution must establish by a preponderance of the evidence the last statutory element for each offense, which is whether "the conduct took place in the context of and was associated with hostilities."

> . . .
> **Assistant Trial Counsel:** Thank you so much. Well, Your Honor, the government will contain its comments at this point to some of the responses that have already been made, as you mentioned, Your Honor, in the motions to highlight how—highlight the fact that there is evidence of a nexus that would—without the need to go further into an offer of evidence at this point on the fact.

App. 50-53; *see also* Appellant's Br. 11; Appellee's Br. ix-xi (quoting transcript); App. 11-17. Following this guidance from the military judge, the government continued to argue the facts and law to support a nexus between the charges and hostilities with the United States. *See* App. 53-59, 68 (referring back to App. 9-24), 470 n.5. If a party makes a proffer, and the military judge believes the fact proffered will aid in the resolution of the issue, the military judge should advise the party making the proffer that it is rejected, absent production of evidence to support it, or accepted subject to objection, as appropriate. *See* Oshodi v. Holder, 729 F.3d 883, 899 (9th Cir.2013) (Kozinski, C.J., Rawlinson & Bybee, JJ., dissenting) ("[F]eedback about what's going on in the judicial mind is helpful. ... Giving litigants ... guidance ... is an important part

The Prosecution was given multiple opportunities with the filing of two sets of pleadings and during two separate oral arguments to provide a factual basis for the Government's assertion of subject matter jurisdiction over the charged offenses. The Prosecution continually declined the opportunity, instead informing the Commission it would provide the factual basis in its presentation of evidence to the panel on the merits. These decisions were fatal as to the charged offenses, which are the subject of AE 168 and AE 241.

The Prosecution's request for oral argument is **DENIED.** The Prosecution's request for reconsideration of the Commission's order in AE 168G/AE 241C is **GRANTED.** Upon reconsideration, the Prosecution's request to conduct an evidentiary hearing for the purpose of establishing subject matter and personal

of the job ....."). The military judge is neither "a pig hunting for truffles" nor is he "a potted plant." *Potter v. District of Columbia,* 558 F.3d 542, 553 (D.C.Cir.2009) (Williams, Senior J., concurring). A military judge may show initiative without showing bias for one side or the other. *See United States v. Carson,* 455 F.3d 336, 355 (D.C.Cir.2006) (per curiam) ("[t]he threshold for a showing of bias is high" (quoting *United States v. Edmond,* 52 F.3d 1080, 1099 (D.C.Cir.1995) (per curiam); citing *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994))). Here, the military judge appeared to accept the proffer as to some of the facts in the charges and the parties' briefs, *see* App. 220-221, and reject other facts without supporting evidence, such as a spike in oil prices after the attack on the *MV Limburg.* After the military judge dismissed the charges, appellant proffered additional facts as part of a motion for reconsideration, and appellant included supporting documentation. *See* App. 246-454. Appellee urged the military judge to reject the facts appellant proffered and to deny appellant's reconsideration request for an evidentiary hearing arguing forfeiture and waiver. *See* App. 455-464. The military judge denied the reconsideration request for an evidentiary hearing. App. 470-71.

jurisdiction over the Accused as to [the charges] is **DENIED**.

App. 469-71 (footnotes and paragraph numbers omitted).

## Standard of Review

██ We review de novo whether the military judge had authority to dismiss the charges without holding an evidentiary hearing or accepting appellant's proffers, or without a stipulation from the parties; however, "we are nonetheless mindful that the trial court's subsidiary factual findings are to be upheld unless clearly erroneous." *United States v. Yunis*, 859 F.2d 953, 958 (D.C.Cir.1988), *aff'd*, 924 F.2d 1086 (D.C.Cir.1991).

## Subject-Matter Jurisdiction Not Implicated

Appellee asserts that the issue of the nexus of the charged conduct to hostilities with the United States is jurisdictional, and, as such, this threshold determination affects the timing of his motion to dismiss for lack of such nexus and shifts the burden of proof from appellee to the appellant.[5] *See* Appellee's Br. "Because the consequences that attach to the jurisdictional label may be so drastic," the Supreme Court has "tried in recent cases to bring some discipline to the use of this term." *Henderson v. Shinseki*, 562 U.S. 428, 435,

131 S.Ct. 1197, 179 L.Ed.2d 159 (2011) (brackets omitted). "In recent years, [the Supreme Court has] repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has 'clearly state[d]' as much." *United States v. Wong*, ─── U.S. ───, 135 S.Ct. 1625, 1632, 191 L.Ed.2d 533 (2015) (second alteration in original; citations omitted).

██ A rule is not "jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory ... should not be given the jurisdictional brand." *Henderson*, 562 U.S. at 435, 131 S.Ct. 1197 (brackets and citations omitted). The Supreme Court "has often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional." *Wong*, 135 S.Ct. at 1633 (citations omitted). The " 'jurisdictional' [label] properly applies only to 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating that authority." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-61, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (citations omitted).[6] "[W]e look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.' "

---

5. Under R.M.C. 907(b)(1)(A), a motion challenging jurisdiction can be made at any time; whereas under R.M.C. 905(b)(1), notice of a motion challenging nexus, as a nonjurisdictional defect in the swearing, forwarding, investigation, or referral of charges, must be made before entry of pleas. Under R.M.C. 905(c)(2)(A), if the issue is not jurisdictional, appellee, as the moving party, has the burden of challenging the nexus of the charged conduct to hostilities; whereas under R.M.C. 905(c)(2)(B), if the issue is jurisdictional, appellant has the burden of proving jurisdiction.

6. In discussing the Military Commissions Act of 2006, the Court of Appeals for the District of Columbia Circuit has stated:

The question whether that Act is unconstitutional does not involve " 'the [military

commission's] statutory or constitutional *power* to adjudicate the case.' " *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)); *United States v. Williams*, 341 U.S. 58, 66, 71 S.Ct. 595, 95 L.Ed. 747 (1951) ("Even the unconstitutionality of the statute under which the proceeding is brought does not oust a court of jurisdiction."); *Lamar v. United States*, 240 U.S. 60, 65, 36 S.Ct. 255, 60 L.Ed. 526 (1916) ("The objection that the indictment does not charge a crime against the United States goes only to the merits of the case."); *see also United States v. Delgado–Garcia*, 374 F.3d 1337, 1342–43 (D.C.Cir.2004) (explaining limits of so-called *"Black-*

*Henderson,* 562 U.S. at 435, 131 S.Ct. 1197 (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)).[7] Moreover, the Supreme Court noted in *Henderson* that it was significant that Congress placed the time limit at issue in a subchapter entitled "Procedure," and not in the "Organization and Jurisdiction" subchapter of the statute, which suggested the time limit issue was not jurisdictional. *Id.* at 439, 131 S.Ct. 1197.

■ In determining whether the nexus to hostilities is a jurisdictional requirement or not, we use principles of statutory construction, and "[w]e begin, as we must, with the text of the statute." *Netcoalition & Secs. Indus. & Fin. Mkts. Ass'n v. SEC,* 715 F.3d 342, 348 (D.C.Cir.2013) (citing *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,* 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004); second citation omitted). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Id.* (quoting *Engine Mfrs. Ass'n,* 541 U.S. at 252, 124 S.Ct. 1756).

In *United States v. Miranda,* the Court of Appeals for the District of Columbia Circuit emphasized the jurisdictional language in 46 U.S.C. § 70504(a), which provides:

§ 70504. Jurisdiction and venue

(a) Jurisdiction. Jurisdiction of the United States with respect to a vessel subject to this chapter [46 USCS § 70501 et seq.] is not an element of an offense. Jurisdictional issues arising under this chapter [46 USCS § 70501 et seq.] are preliminary questions of law to be determined solely by the trial judge.

*See* 780 F.3d 1185, 1196 (D.C.Cir.2015). The *Miranda* Court explained the implications of this statutory employment as follows:

The placement of § 70504(a) reinforces that it pertains to the subject-matter jurisdiction of district courts rather than the legislative "jurisdiction" of Congress. Congress situated § 70504(a) within a provision addressing, per its title, "Jurisdiction and venue." 46 U.S.C. § 70504; *see INS v. Nat'l Cent. for Immigrants' Rights, Inc.,* 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.") . . . . The subject of "jurisdiction," addressed in § 70504(a), is best understood likewise to address

---

*ledge/Menna"* exception [right "not to be haled into court at all"] relied on by Bahlul).

*Al Bahlul v. United States,* 767 F.3d 1, 10 n. 6 (D.C.Cir.2014) (en banc), *reh'g en banc granted, judgment vacated,* 2015 U.S. App. LEXIS 16967 (D.C. Cir. Sept. 25, 2015) (per curiam). In *Delgado–Garcia,* the same court analyzed subject-matter jurisdiction where treaty and international law were allegedly contravened when the U.S. Coast Guard stopped a foreign vessel in international waters. *See* 374 F.3d at 1339–40. The court determined that subject-matter jurisdiction was not involved because the power of the court to adjudicate the charges was not implicated. *See id.* at 1341–42; *United States v. Miranda,* 780 F.3d 1185, 1188–91 (D.C.Cir.2015).

**7.** *See also Sebelius v. Auburn Reg'l Med. Ctr.,* —— U.S. ——, 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013) ("To ward off profligate use of the term 'jurisdiction,' we have adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional. We inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction as nonjurisdictional in character.'" (alteration in original) (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); other citations omitted)); *Util. Air Reg. Group v. EPA,* 744 F.3d 741, 751 (D.C.Cir.2014) (Kavanaugh, J., concurring) (referencing the "readily administrable bright line" in *Sebelius*).

the authority of district courts to hear a case rather than Congress's own authority to regulate. In other instances in which Congress uses the term "jurisdiction and venue," the statute indisputably pertains to the jurisdiction of the courts. *See, e.g.*, 7 U.S.C. § 941; 29 U.S.C. § 1370; 40 .U.S.C. § 123. Congress did the same in § 70504.

*Id.* The court found that Miranda's claims "that Congress lacks power under the High Seas Clause of Article I [of the Constitution] to criminalize their actions" and "application of the [Maritime Drug Law Enforcement Act] to their extraterritorial conduct violates their Fifth Amendment due process rights in the absence of a demonstrated nexus between their actions and the United States," *id.* at 1189 (citations omitted), were not jurisdictional and were waived by Miranda's guilty plea, *see id.* at 1189–91.

For military commissions, Congress has provided a clear statement of jurisdiction in a section dedicated solely to that topic. Title 10 U.S.C. § 948d is entitled, "Jurisdiction of military commissions," and it provides for both personal and subject-matter jurisdiction as follows:

> A military commission under this chapter shall have jurisdiction to try persons subject to this chapter for any offense made punishable by this chapter, sections 904 and 906 of this title (articles 104 and 106 of the Uniform Code of

Military Justice), or the law of war, whether such offense was committed before, on, or after September 11, 2001, .... A military commission is a competent tribunal to make a finding sufficient for jurisdiction.

■ Here, the military judge did not cite the absence of personal jurisdiction as part of his rationale for dismissing the charges. *See* App. 241-45, 465-71. There is no assertion that Al-Nashiri fails to meet the jurisdictional criteria of being an AUEB. *See* Appellee's Br. 17, 20 (stating appellee "has not yet challenged personal jurisdiction"). Also, appellant has offered to present evidence to establish that appellee is an AUEB. *See* Appellant's Br. 8, 11-18, 20-22, 39-40. Based on the information in the record before us, and absent any challenge, appellee is a "person[] subject to this chapter."[8] The offenses, as charged, are also made punishable under "Chapter 47A—Military Commissions." As such, appellee's status and the offenses meet the jurisdictional requirements of 10 U.S.C. § 948d. Although appellee incorrectly couched his argument in jurisdictional terms, he has raised an issue about whether there is sufficient nexus to United States hostilities in the facts here, involving a bombing of a French vessel resulting in the death of a Bulgarian citizen off the coast of Yemen, to satisfy the requirements of 10 U.S.C. § 950p(c) and international law.[9] We now address that issue.

---

8. Should appellee challenge his status as an AUEB, it would be appropriate for the military judge to hold an evidentiary hearing on this issue. *See United States v. Khadr*, 717 F.Supp.2d 1215 (USCMCR 2007).

9. Appellant urged the military judge to deny the defense motion for dismissal because "'the accused's prosecution before a military commission for the alleged attack on the MV *Limburg* is consistent with' the protective principle of international law." Appellant's Br. 9 (citing App. 487-488; 10 U.S.C. § 948a(7)). Appellant also cites to elements of

the conspiracy charges for relevant facts and states:

> [T]hese jurisdictional facts are "more than enough" for the Commission to exercise jurisdiction and proceed to trial on the merits. *See United States v. Yousef*, 327 F.3d 56, 111 (2d Cir.2003) (finding that the intent to carry out attacks on Americans using the same plan and modus operandi was "more than enough to permit the United States to claim jurisdiction over Yousef under the protective principle," notwithstanding that the charge in question involved a non-

## The Charges

Subchapter VIII, "Punitive Matters," 10 U.S.C. § 950p(c), provides that a nexus to "hostilities" is one of the "common circumstances" for all offenses triable by military commissions under Chapter 47A, Military Commissions.[10]

Specification 2 of Charge IV (Terrorism), in violation of 10 U.S.C. § 950t(24),[11] states:

> In that Abd al Rahim Hussayn Muhammad al NASHIRI (See Appendix A for a list of aliases), an alien unprivileged enemy belligerent subject to trial by military commission, did, in or around the coast of Al Mukallah, Yemen, on or about 6 October 2002, **in the context of and associated with hostilities** [ (emphasis added) ], and in a manner calculated to influence and affect the conduct of the United States government by intimidation and coercion and to retaliate against the United States government, intentionally kill and inflict great bodily harm on one or more protected persons and engage in an act that evinced a

wanton disregard for human life, to wit: detonating an explosives-laden boat alongside *MV Limburg*, resulting in the death of one civilian person, Atanas Atanasov, serving onboard *MV Limburg*.

The Specification of Charge VII (Attacking Civilians), in violation of 10 U.S.C. § 950t(2),[12] states:

> In that Abd al Rahim Hussayn Muhammad al NASHIRI (See Appendix A for a list of aliases), an alien unprivileged enemy belligerent subject to trial by military commission, did, in or around the coast of Al Mukallah, Yemen, on or about 6 October 2002, **in the context of and associated with hostilities** [ (emphasis added) ], intentionally attack civilian persons onboard *MV Limburg*, a civilian oil tanker crewed by civilian personnel, not taking direct or active part in hostilities, and that resulted in the death of one person, Atanas Atanasov, and the said NASHIRI knew that such targets were in a civilian status.

The Specification of Charge VIII (Attacking Civilian Objects), in violation of 10 U.S.C. § 950t(3),[13] states:

---

American airplane, a flight route from the Philippines to Japan, and no American casualties).
Appellant's Reply Br. 5–6 (Oct. 17, 2014).

**10.** Title 10 U.S.C. § 950p(c) ("Common circumstances. An offense specified in this subchapter is triable by military commission under this chapter only if the offense is committed in the context of and associated with hostilities.").

**11.** Title 10 U.S.C. § 950t(24) ("Terrorism. Any person subject to this chapter who intentionally kills or inflicts great bodily harm on one or more protected persons, or intentionally engages in an act that evinces a wanton disregard for human life, in a manner calculated to influence or affect the conduct of government or civilian population by intimidation or coercion, or to retaliate against government conduct, shall be punished, if death results to one or more of the victims, by death or such other punishment as a military commission under this chapter may direct, and, if

death does not result to any of the victims, by such punishment, other than death, as a military commission under this chapter may direct.").

**12.** Title 10 U.S.C. § 950t(2) ("Attacking civilians. Any person subject to this chapter who intentionally engages in an attack upon a civilian population as such, or individual civilians not taking active part in hostilities, shall be punished, if death results to one or more of the victims, by death or such other punishment as a military commission under this chapter may direct, and, if death does not result to any of the victims, by such punishment, other than death, as a military commission under this chapter may direct.").

**13.** Title 10 U.S.C. § 950t(3) ("Attacking civilian objects. Any person subject to this chapter who intentionally engages in an attack upon a civilian object that is not a military objective shall be punished as a military commission under this chapter may direct.").

In that Abd al Rahim Hussayn Muhammad al NASHIRI (See Appendix A for a list of aliases), an alien unprivileged enemy belligerent subject to trial by military commission, did, in or around the coast of Al Mukallah, Yemen, on or about 6 October 2002, **in the context of and associated with hostilities** [ (emphasis added) ], intentionally attack *MV Limburg*, a civilian oil tanker owned by a civilian entity and crewed by civilian personnel, not a military objective, and the said NASHIRI knew that such target was not a military objective.

The Specification of Charge IX (Hijacking or Hazarding a Vessel or Aircraft), in violation of 10 U.S.C. § 950t(23),[14] states:

In that Abd al Rahim Hussayn Muhammad al NASHIRI (See Appendix A for a list of aliases), an alien unprivileged enemy belligerent subject to trial by military commission, did, in or around the coast of Al Mukallah, Yemen, on or about 6 October 2002, **in the context of and associated with hostilities** [ (emphasis added) ], intentionally endanger the safe navigation of a vessel, *MV Limburg*, not a legitimate military objective, to wit: by causing an explosives-laden civilian boat to detonate and explode alongside *MV Limburg*, causing damage to the operational ability and navigation of *MV Limburg*, and resulting in the death of one crewmember, Atanas Atanasov.

The parties at trial cited the last element of each offense as the point of contention because of its jurisdictional implications. The third (and last) element of Specification 2 of Charge IV, Terrorism, in violation of 10 U.S.C. § 950t(24), is "The killing, harm or wanton disregard for human life took place in the context of and was associated with hostilities."[15] App. 468 (citing M.M.C., pt. IV-19). The fifth (and last) element of Charge VII, Attacking Civilians in violation of 10 U.S.C. § 950t(2), and of Charge VIII, Attacking Civilian Objects, in violation of 10 U.S.C. § 950t(3), is "The attack took place in the context of and was associated with hostilities." *Id.* at 468-69 (citing M.M.C., pt. IV-4). The fourth (and last) element of Charge IX, Hijacking or Hazarding a Vessel or Aircraft, in violation of 10 U.S.C. § 950t(23), is "The conduct took place in the context of and was associated with hostilities." *Id.* at 469 (citing M.M.C., pt. IV-18).

Our court is restricted to matters of law because this is an interlocutory appeal taken pursuant to 10 U.S.C. § 950d(g).

### The 2012 Manual for Military Commissions and the 2012 Manual for Courts–Martial

The 2009 M.C.A. § 949d(a)(1)(A)-(B)[16] is

---

**14.** Title 10 U.S.C. § 950t(23) ("Hijacking or hazarding a vessel or aircraft. Any person subject to this chapter who intentionally seizes, exercises unauthorized control over, or endangers the safe navigation of a vessel or aircraft that is not a legitimate military objective shall be punished, if death results to one or more of the victims, by death or such other punishment as a military commission under this chapter may direct, and, if death does not result to any of the victims, by such punishment, other than death, as a military commission under this chapter may direct.").

**15.** Title 10 U.S.C. § 948a(9) ("The term 'hostilities' means any conflict subject to the laws of war.").

**16.** Title 10 U.S.C. § 949d(a)(1)(A)-(B) ("'(a) Sessions without presence of members. (1) At any time after the service of charges which have been referred for trial by military commission under this chapter, the military judge may call the military commission into session without the presence of the members for the purpose of—

(A) hearing and determining motions raising defenses or objections which are capable of determination without trial of the issues raised by a plea of not guilty;

(B) hearing and ruling upon any matter which may be ruled upon by the military judge under this chapter, whether or not the matter is appropriate for later consideration or decision by the members;'").

similar to Uniform Code of Military Justice (UCMJ) article 39(a)(1)-(2),[17] 10 U.S.C. § 839(a)(1)-(2), which was added by the 1968 Military Justice Act. The legislative history of that Act reflects that the addition to the Code was made

> to conform military criminal procedure with the rules of criminal procedure applicable in the U.S. district courts and otherwise to give statutory sanction to pretrial and other hearings without the presence of the members concerning those matters which are amenable to disposition on either a tentative or final basis by the military judge.

S. Rep. No. 90-1601, at App. 517 (1968). The legislative history further states that "[t]he pretrial disposition of motions raising defenses and objections is in accordance with rule 12 of the Federal Rules of Criminal Procedure." *Id.* The version of Fed. R. Crim. P. 12 in effect during the litigation of the jurisdiction motion closely duplicates language in the pertinent provisions of both MCA section 949d(a)(1)(A) and UCMJ article 39(a)(1).

Rule for Military Commissions 905 governs pretrial motions in military commissions, and is the same as Rule for Courts-Martial (R.C.M.) 905, except for exclusions not pertinent to this appeal. The relevant provisions of R.M.C. 905(b)-(h) read:

> (b) *Pre-trial motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue of guilt may be raised before trial. The following must be raised before a plea is entered:

> (1) Defenses or objections based on defects (other than jurisdictional defects) in the swearing, forwarding, investigation, or referral of charges;

> (2) Defenses or objections based on defects in the charges and specifications (other than any failure to show jurisdiction or to charge an offense, which objections shall be resolved by the military judge at any time during the pendency of the proceedings);

> . . .

> (c) *Burden of proof.*

> (1) *Standard.* Unless otherwise provided in this Manual, the burden of proof on any factual issue the resolution of which is necessary to decide a motion shall be by a preponderance of the evidence.

> (2) *Assignment.*

> (A) Except as otherwise provided in this Manual the burden of persuasion on any factual issue the resolution of which is necessary to decide a motion shall be on the moving party.

> (B) In the case of a motion to dismiss for lack of jurisdiction or lack of speedy trial under R.M.C. 707, the burden of persuasion shall be upon the prosecution.

> (d) *Ruling on motions.* A motion made before pleas are entered shall be determined before pleas are entered unless, if otherwise not prohibited by this Manual, the military judge for good cause orders that determination be deferred until trial of the general issue or after findings,

---

17. Title 10 U.S.C. § 839(a)(1)-(2) ("(a) At any time after the service of charges which have been referred for trial to a court-martial composed of a military judge and members, the military judge may, subject to section 835 of this title (article 35), call the court into session without the presence of the members for the purpose of—

(1) hearing and determining motions raising defenses or objections which are capable of determination without trial of the issues raised by a plea of not guilty;

(2) hearing and ruling upon any matter which may be ruled upon by the military judge under this chapter, whether or not the matter is appropriate for later consideration or decision by the members of the court;").

but no such determination shall be deferred if a party's right to review or appeal is adversely affected. Where factual issues are involved in determining a motion, the military judge shall state the essential findings on the record.

. . .

(h) *Written motions.* Written motions may be submitted to the military judge after referral and when appropriate they may be supported by affidavits, with service and opportunity to reply to the opposing party. Such motions may be disposed of before arraignment and without a session. The military judge may, in the judge's discretion, grant the request of either party for an R.M.C. 803 session to present oral argument or have an evidentiary hearing concerning the disposition of written motions.

Motions to dismiss in military commissions are controlled by R.M.C. 907, and this rule is the same as R.C.M. 907. Rule for Military Commissions 907 reads:

(a) *In general.* A motion to dismiss is a request to terminate further proceedings to one or more charges and specifications on grounds capable of resolution without trial of the general issue of guilt.

(b) *Grounds for dismissal.* Grounds for dismissal include the following—

(1) *Nonwaivable grounds.* A charge or specification shall be dismissed at any stage of the proceedings if:

(A) The military commission lacks jurisdiction to try the accused for the offense; or

(B) The specification fails to state an offense.

 Litigation practice in the military justice system involves pretrial motions on a variety of issues. The two types of procedures used in courts-martial for pretrial resolution of issues pertaining to personal jurisdiction and unlawful orders support that, here, absent concurrence by both parties, the required approach to use in determining whether the offense is committed "in the context of and associated with hostilities," is to reserve it for resolution until after the government has presented all of the evidence on the merits. Based on our analysis of Supreme Court jurisprudence, and both federal and military case law, we conclude that the military judge is foreclosed from requiring the government to prove an element of the offense prior to the presentation of evidence on the merits.

### Litigation under the UCMJ—Personal Jurisdiction

 Post-*Solorio v. United States*, 483 U.S. 435, 439, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), "the status of the individual is the focus for determining both jurisdiction over the offense and jurisdiction over the person." *United States v. Ali*, 71 M.J. 256, 264 (C.A.A.F.2012) (citations omitted).[18] Article 2; UCMJ, 10 U.S.C. § 802, controls personal jurisdiction. *United States v. Oliver*, 57 M.J. 170, 172 (C.A.A.F.2002). For charges involving "purely military offense[s]," the accused must be "a member of the military."[19] The

---

**18.** In *United States v. Ali*, the most significant military jurisdiction case in recent years, the Court of Appeals for the Armed Forces said that "[b]ecause Ali was charged with and convicted of misconduct punishable by Articles 107, 121, and 134 of the UCMJ, the court-martial had jurisdiction over the offenses." 71 M.J. 256, 261 (C.A.A.F.2012). *Ali* held that under Article 2(a)(10), UCMJ, "the congressional exercise of jurisdiction, as applied to Ali, a non-United States citizen [and]

Iraqi national, subject to court-martial outside the United States during a contingency operation, does not violate the Constitution." *Id.* at 259.

**19.** *United States v. Contreras*, 69 M.J. 120, 123 (C.A.A.F.2010); see *United States v. McDonagh*, 14 M.J. 415, 422 (C.M.A.1983) (noting distinction between purely military offenses and offenses not peculiarly military); *United States v. Laws*, 11 M.J. 475, 476 (C.M.A.1981)

language " 'any person subject to this chapter'—does not establish an element of the offense but, rather, sets forth the baseline for jurisdiction under the UCMJ common to all offenses." *Oliver*, 57 M.J. at 172; *see, e.g.*, 10 U.S.C. §§ 877-934 (excluding "any person subject to this chapter" from elements of offenses). Notably, the *Military Judges' Benchbook* does not contain an instruction to assist the court-martial members in deciding whether the accused is "subject to this chapter." *Oliver*, 57 M.J. at 172; *see* Department of the Army Pamphlet 27–9, *Military Judges' Benchbook* (Sept. 10, 2014). "This longstanding practice [in court-martial jurisprudence] underscores the fact that Congress set forth the 'any person' language as a basic jurisdictional prerequisite, not as an element of a particular offense or offenses that are not peculiarly military." *Oliver*, 57 M.J. at 172.

 The rationale for treating personal jurisdiction differently than other legal issues is that "as only a member of the armed forces may commit a peculiarly military offense, the factual issue of the individual's status is part of the question of guilt or innocence and [this question] has to be decided by the factfinder(s)." *United States v. Jessie*, 5 M.J. 573, 574 (A.C.M.R. 1978) (citation and footnote omitted); *see United States v. Marsh*, 15 M.J. 252, 254 & n. 2 (C.M.A.1983) (in absence without leave case, holding that the accused's military status "really is an element of the offense" to be proven beyond a reasonable doubt). Where the offenses are peculiarly military, as they were in *United States v. Bailey*, an absence without leave and desertion case, the Navy Court of Military Review explained:

> As is true with other defenses, when the issue of military status is raised, the court must be instructed upon it and advised that the burden of proof is upon the Government with respect to this issue, and that unless the Government establishes beyond a reasonable doubt that such defense is not valid, the accused must be found not guilty. The issue at that point is not to be considered a relitigation of the question of jurisdiction, however. That proposition—the authority of the court to try the accused—is settled once and for all by the judge as an interlocutory matter when it is raised, employing a preponderance of the evidence standard.

6 M.J. 965, 969 (N.C.M.R.1979) (en banc). In purely military offenses, if the military judge denies a pretrial motion challenging personal jurisdiction, the issue of jurisdiction is ultimately a matter for the factfinder to find beyond a reasonable doubt. *See United States v. McDonagh*, 14 M.J. 415, 422 (C.M.A.1983) (citations omitted); *United States v. Bobkoskie*, 1 M.J. 1083, 1087–88 (N.C.M.R.1977).

 "On the other hand, if the accused were charged with murder, larceny, or some other offense not peculiarly military, [personal jurisdiction] would only be an issue for the military judge to decide as an interlocutory matter" and should not be presented to the fact-finder. *McDonagh*, 14 M.J. at 422 (citation omitted); *see United States v. Harrison*, 3 M.J. 1020, 1024 n. 3 (N.C.M.R.1977), *aff'd*, 5 M.J. 476 (C.M.A. 1978); *Bobkoskie*, 1 M.J. at 1087–88.

## Litigation under the UCMJ—Unlawful Orders

Under current law, the military judge assesses whether an order is lawful; however, this has not always been the case. In 1989, in *United States v. McShane*, a military trial judge dismissed a charge of fail-

---

(discussing jurisdiction in absence without leave case where enlistment, and therefore, military status challenged).

ing to obey a lawful order. *See* 28 M.J. 1036, 1037–38 (A.F.C.M.R.1989). The Air Force appellate court ruled that the military judge was not "empowered" to rule that the order was "not issued by a person authorized to issue the order," which was an element of the offense of disobedience of a lawful order. *Id.* at 1038–39 (citation omitted). The appellate court held that the military judge had "made a ruling which was not capable of resolution without a trial on the general issue of guilt," granted the government's interlocutory appeal made under Article 62, UCMJ, and reinstated the charge. *See id.*

Later that same year, in *United States v. Spencer*, 29 M.J. 740, 742–3 (A.F.C.M.R. 1989), *modified*, 29 M.J. 880, the Air Force court upheld a military judge's pretrial determination that an order directing the accused to provide his complete civilian medical records from a specific time range to his commander was unlawful. The *Spencer* Court distinguished *McShane* as follows:

> This is a valid ground for a motion to dismiss and is capable of resolution without a trial on the general issue of guilt. R.C.M. 907(a); *United States v. McShane*, 28 M.J. 1036 (A.F.C.M.R. 1989). The basis for the motion is that the order was over-broad and unreasonably interfered with the accused's right to privacy. This is a constitutional attack on the order based on the due process clause of the Fifth Amendment to the United States Constitution and Supreme Court cases such as *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

*Id.* at 741 n. 1.

The Court of Appeals for the Armed Forces subsequently decided that the issue of the legality of an order "must be decided by the military judge, not the court-martial panel." *United States v. Mack*, 65 M.J. 108, 111 (C.A.A.F.2007) (citations

omitted). In a bifurcated process, the military judge makes an initial preliminary ruling that there is "an adequate factual basis for the allegation that the order was lawful"; however, "[that] does not relieve the prosecution of its responsibility during its case-in-chief of proving beyond a reasonable doubt the facts necessary to establish the elements of the offense." *Id.* at 111–12 (alteration in original) (quoting *United States v. Deisher*, 61 M.J. 313, 318 (C.A.A.F.2005)). "[T]he lawfulness of an order *is not an element*, but is an issue of law to be resolved by the military judge, not members . . . ." *Deisher*, 61 M.J. at 318 (emphasis added) (citing *United States v. New*, 55 M.J. 95 (C.A.A.F.2001)).

Appellee urges that we adopt a similar bifurcated process here. However, we conclude that the UCMJ procedural precedent should not be applied to resolve an issue involving the required nexus to hostilities under the 2009 MCA and the law of war because a nexus to hostilities *is an element* of the charges.

**Litigation in U.S. District Courts**

The counterpart to R.C.M. 905(b) and 907 is Fed. R. Crim. P. 12(b), which at the time of the military judge's rulings in the case before us provided, in pertinent part:

(b) Pretrial Motions.

(1) *In General.* Rule 47 applies to a pretrial motion.

(2) *Motions That May Be Made Before Trial.* A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.

(3) *Motions That Must Be Made Before Trial.* The following must be raised before trial:

(A) a motion alleging a defect in instituting the prosecution;

(B) a motion alleging a defect in the indictment or information—but at any time while the case is pending, the court

may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense[.]

▮▮▮▮ Federal Rule of Criminal Procedure 12(b) was amended on April 25, 2014, with an effective date of December 1, 2014. Rule 12(b)(1) now states, *"In general. A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits.* Rule 47 applies to a pretrial motion." (Second emphasis added.) The Court of Appeals for the District of Columbia Circuit noted that under Fed. R. Crim. P. 12(b) " '[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.' The 'general issue' has been defined as 'evidence relevant to the question of guilt or innocence.' " *United States v. Yakou*, 428 F.3d 241, 246 (D.C.Cir.2005) (alteration in original; citations omitted). For trials in U.S. District Courts, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (citations omitted). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.1992)). "An indictment need only

contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.' " *United States v. Campbell*, 798 F.Supp.2d 293, 309 (D.D.C.2011) (quoting Fed. R. Crim. P. 7(c)). At the pretrial stage, as in the case now before us, we assume "the charging paper's allegations ... are true." *United States v. Guerrier*, 669 F.3d 1, 3–4 (1st Cir.2011) (citation omitted); *see also Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (stating that at the pretrial stage indictment allegations "must be taken as true").[20]

In *Yakou*, the Court of Appeals for the District of Columbia Circuit affirmed the trial judge's pretrial dismissal of an indictment for "brokering activities in violation of the Arms Export Control Act ('AECA'), 22 U.S.C. § 2778(b)(2), (c) (2000)." 428 F.3d at 243. Where material facts are undisputed, and in the absence of a government objection or where "the government has made a full proffer of evidence or where there is a stipulated record," the court may dismiss an indictment pretrial for insufficiency of the evidence. *Id.* at 246–47 (citing cases from the Second, Third, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits).

> Only the Eleventh Circuit has held that even where there are undisputed facts a district court may not engage in a pretrial determination of the sufficiency of the evidence, *see United States v. Salman*, 378 F.3d 1266, 1267–69 (11th Cir. 2004), but there was no indication that the government failed to object in the district court.[21]

**20.** Appellant urges us to apply the facts in the charge sheet to conclude these facts are "more than enough" to "proceed to trial on the merits." Appellant's Reply Br. 4-5 (citation omitted). Application of these facts, however, is unnecessary because the military judge did not address the factual sufficiency of the charges.

**21.** The military judge concluded in the instant case that this passage from *United States v. Yakou*, 428 F.3d 241, 247 (D.C.Cir.2005), meant the question of his authority to dismiss the charges for insufficiency of the evidence was unsettled. *See* App. 467-68. Our superior court is the Court of Appeals for the District

*Id.* at 247.[22]

Recently, the District Court for the District of Columbia declined to consider the merits of a motion to dismiss an indictment on sufficiency of the evidence grounds, with an indictment charging violation of 18 U.S.C. § 2071(a), which prohibits willful and unlawful removal of "papers and documents . . . that were filed and deposited in a public office." *United States v. Hitselberger*, 991 F.Supp.2d 108, 125–26 (D.D.C.2014) (alteration in original). The defendant offered to stipulate to any facts proffered by the government for purposes of his motion; however, the government objected to consideration of the pretrial motion and declined to stipulate. *See id.* at 125. The court, citing *Yakou*, noted that the alleged evidence in the government's motion tended to indicate the government could not prove several charges. *See id.* at 126. Nevertheless, the court denied defendant's motion, indicating, "It is usually 'improper to force the Government . . . to proffer its evidence pretrial so that the defense might test its sufficiency. That could, for instance, curtail the Government's ability to obtain additional evidence or locate new witnesses.' " *Id.* at 125 (alteration in original) (quoting *United States v. Nitschke*, 843 F.Supp.2d 4, 9 (D.D.C. 2011)). That court held that it had "a facially valid indictment and no facts before

it. If the government believes that it can convict [the defendant] of . . . [a] violation of 18 U.S.C. § 2071(a), it is entitled to proceed to trial on those charges." *Id.* at 126.

**Cases in U.S. District Courts involving Nexus Requirements**

Pretrial motions in U.S. district courts seeking dismissal of a charge because a defendant alleges the constitutional element of a nexus to interstate commerce provide persuasive analysis applicable here: "A criminal act committed wholly within a State 'cannot be made an offence against the United States, unless it [has] some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.' " *Bond v. United States*, —— U.S. ——, 134 S.Ct. 2077, 2086, 189 L.Ed.2d 1 (2014) (citation omitted). When the federal government prohibits conduct that falls within the scope of conduct traditionally within the areas states and local governments regulate, the Constitution's basic principles of federalism require the government to prove a nexus to interstate commerce. *See id.* at 2089–94.

For example, Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. App. § 1202(a) "prohibited any convicted felon from receiv[ing], possess[ing], or transport[ing] in commerce or affecting commerce . . . any firearm."[23]

---

of Columbia Circuit, and we therefore look to *Yakou* for binding precedent.

**22.** *See also United States v. Perez*, 575 F.3d 164, 166–67 (2d Cir.2009) ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." (alteration in original) (quoting *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir.1998))); *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir.1988) (affirming dismissal of the indictment where the "government's characterization of the undisputed facts" that were "proffered to the defendant . . . simply

did not conform to the allegations in the indictment"); *United States v. Naegele*, 367 B.R. 1, 14 (D.D.C.2007) ("Only in 'unusual circumstance[s]' is pretrial dismissal of the indictment possible on sufficiency-of-the-evidence grounds, and that is 'where there are material facts that are undisputed and only an issue of law is presented.' " (alteration in original) (quoting *Yakou*, 428 F.3d at 247)).

**23.** *Bond v. United States*, —— U.S. ——, 134 S.Ct. 2077, 2089, 189 L.Ed.2d 1 (2014) (citing *United States v. Bass*, 404 U.S. 336, 351, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), *superseded in part by statute* Firearms Owners' Protection Act, Pub. L. No. 99–308, § 104(b), 100 Stat. 459 (1986)).

This statute necessarily included a requirement to prove "a connection to interstate commerce." Without this requirement, the statute would make "traditionally local criminal conduct a matter for federal enforcement." *Id.* (quoting *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)). The Supreme Court "require[d] proof of a connection to interstate commerce in every case, thereby 'preserv[ing] as an element of all the offenses a requirement suited to federal criminal jurisdiction [24] alone.'" *Id.* (alteration in original) (quoting *Bass*, 404 U.S. at 351, 92 S.Ct. 515).

■■■■■ Assuming arguendo that if an offense "committed in the context of and associated with hostilities" could be construed as a "jurisdictional element," we concur with those courts holding that when the jurisdictional requirement is also a substantive element of the offense, the issue should be determined at trial.[25] In *United States v. Alfonso*, the Second Circuit analyzed the jurisdictional requirement for an effect on interstate commerce as an element of the offense. *See* 143 F.3d at 776–77. "[T]he determination of whether the jurisdictional element has been satisfied is part and parcel of the inquiry into the 'general issue' of whether the statute has been violated." *Id.* at 777. "When a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial. ... This is clearly the case when the jurisdictional requirement is also a substantive element of the offense charged." *Id.* (alteration in original; citations omitted). The Second Circuit held that because the government had not "made what can fairly be described as a full proffer of the evidence it intend[ed] to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence [was] not appropriately addressed on a pretrial motion to dismiss an indictment." *Id.* at 776–77.

The Ninth Circuit also provided similar guidance in *United States v. Nukida*, where the court analyzed the government's

24. *See United States v. Sarraj*, 665 F.3d 916, 921 n. 2 (7th Cir.2012) ("The interstate commerce element of the section 922(g)(1) crime [unlawful transportation of firearms across state lines] is often described loosely as the 'jurisdictional' element. As we have explained in a very similar context, it is better understood as simply one element of the crime; it does not affect the court's subject matter jurisdiction." (citing *United States v. Skoczen*, 405 F.3d 537, 541–42 (7th Cir.2005))).

25. The Court of Appeals for the District of Columbia Circuit described the scope of "jurisdictional elements" as follows:

[W]hen Congress establishes a so-called "jurisdictional element" addressing the reach of its legislative authority, Congress does not use the term "jurisdiction" in the statute. *See, e.g.*, 18 U.S.C. § 656 (criminalizing certain conduct by an individual who is "an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank"); *id.* § 922(q)(2)(A) (making it "unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows ... is a school zone"). Rather, "jurisdictional element" is a "colloquialism" used by "[l]awyers and judges." *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir.1999). Statutes that establish "jurisdictional elements" not only contain no use of the term "jurisdiction," but, consistent with the description "jurisdictional element," treat the relevant condition as an element of the offense to be found by a jury. In that sense, "proof of [a jurisdictional element] is no different from proof of any other element of a federal crime." *Id.* at 381. By contrast, § 70504(a) specifically provides that the "jurisdiction of the United States with respect to a vessel" is not an element of the offense and is to be determined by the court rather than by the jury, signifying that Congress did not intend to establish a "jurisdictional element."

*Miranda*, 780 F.3d at 1195 (first brackets added).

interlocutory appeal of the trial judge's decision to dismiss five charges alleging tampering with consumer products for lack of jurisdiction. *See* 8 F.3d 665, 666–67 (9th Cir.1993). Title 18 U.S.C. § 1365(a) prohibits "tampering with any consumer product that affects interstate or foreign commerce, or the labeling of, or container for, any such product, ...." Nukida challenged, and the District Court evaluated: (1) whether the allegations affected commerce; (2) whether the charges failed to state an offense; and (3) the consequent impact on subject-matter jurisdiction, if any. *See* 8 F.3d at 668–69. The Ninth Circuit concluded "a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense." *Id.* at 669 (citing *United States v. Smith*, 866 F.2d 1092, 1096 n. 5 (9th Cir.1989); second citation omitted). A material element of a section 1365 offense is that the "tampered product affect interstate commerce." *Id.* (citing *United States v. Alvarez*, 972 F.2d 1000, 1003 (9th Cir. 1992) (per curiam)).[26] The Ninth Circuit concluded that Nukida's challenge to the "government's ability to prove that her actions affected commerce ... amounted to a premature challenge to the sufficiency of the government's evidence tending to prove a material element of the offense defined by section 1365." *Id.* at 669–70.[27]

**26.** That part of the *Alvarez* decision concerning alignment of a specific charged state offense with a generic federal offense has received considerable subsequent analysis. *See United States v. Aguila–Montes de Oca*, 655 F.3d 915, 923 (9th Cir.2011) (en banc) (per curiam) (subsequent history omitted); *Kawashima v. Mukasey*, 530 F.3d 1111, 1116 (9th Cir.2008) (per curiam) (subsequent history omitted).

**27.** In *United States v. Reasor*, the Fifth Circuit explicitly disagreed with the Ninth Circuit's conclusion in *Nukida* that "the essential interstate commerce nexus element of the crime should be read to double as a prerequisite to judicial jurisdiction in the absence of any plain words to this effect." 418 F.3d 466, 469 n. 4 (5th Cir.2005). The *Reasor* Court acknowledged that "an element can be jurisdictional in nature without affecting the jurisdiction of the court to adjudicate the case," and concluded that "[t]he language and structure of the statute indicate that the requirement is merely an element of the crime." *Id.* at 469 & n. 4 (citing *United States v. Robinson*, 119 F.3d 1205, 1212 n. 4 (5th Cir.1997); second citation omitted). The Fifth Circuit, in the context of a guilty plea, focused on whether there was a factual basis for the plea sufficient to establish an element of the offense; that is, the conduct's effect on interstate commerce. *See* 418 F.3d at 466. The *Reasor* decision has limited relevance here as it did not address pretrial litigation concerning the interstate commerce nexus element.

Where jurisdiction is statutorily premised on the location of the offense, such as at some military installations, federal prisons, federal courthouses, federal hospitals, and/or Indian reservations, being in an area of exclusive or concurrent federal jurisdiction, courts-martial and U.S. district courts use a hybrid approach in their analysis. The judge determines the status of the location as a matter of law, and the fact-finder determines whether the offense occurred at that location as an element that must be satisfied beyond a reasonable doubt. *See United States v. Hernandez–Fundora*, 58 F.3d 802, 809–12 (2d Cir.1995); *United States v. Williams*, 17 M.J. 207, 211–15 (C.M.A. 1984). For example, to obtain a conviction of murder under 18 U.S.C. § 1111(b), the prosecution must prove that the offense occurred within the "special maritime and territorial jurisdiction of the United States." *See Higgs v. United States*, 711 F.Supp.2d 479, 550 (D.Md.2010), *aff'd*, 663 F.3d 726 (4th Cir.2011). In this circumstance, the court determines as a matter of law "whether federal jurisdiction extends to a particular piece of property" and the fact-finder must decide beyond a reasonable doubt "whether the crime at issue occurred on a particular piece of property." *Id.* (citations omitted). These cases do not support appellee's contention that the trial judge should decide the "jurisdictional" element of whether the offense occurred at a particular location, as that decision is exclusively reserved to the fact-finder.

The Third Circuit provides another persuasive example of the correct process for resolving nexus issues in its analysis of 18 U.S.C. § 666. Section 666 criminalizes "[t]heft or bribery concerning programs receiving Federal funds," but only if "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b). In *United States v. DeLaurentis*, a supervisor of detectives was charged with violating 18 U.S.C. § 666, and the trial judge dismissed two charges pretrial because "the government's evidence did not suffice to show a nexus between the alleged bribes and any federal interest or program. ..." 230 F.3d 659, 660 (3d Cir.2000). The Third Circuit reversed, stating that "[u]nless there is a stipulated record, ... a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *Id.* at 660–61 (citations omitted). Dismissal of an indictment is inappropriate based on the "predictions as to what the trial evidence will be." *Id.* at 661.

Finally, appellee cites several cases in his brief where the summary judgment procedures in civil cases were employed. In civil cases, Fed. R. Civ. P. 56 may be used for a pretrial test of the "sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *Id.*

Here there are no stipulated facts; appellee objected to the facts appellant proffered; and the military judge refused to grant an evidentiary hearing.[28] The military judge's orders and rulings dismissing the charges, and appellee's brief and reply provide no case law where a trial judge dismissed a charge without either accepting the government's proffer or a stipulation of the relevant facts. *See* App. 241-45, 465-71.

### Conclusion

We agree with appellant that the military judge, in the limited instances previously discussed, may determine the nexus of the charged offense to the scope of hostilities against the United States in a pretrial motion for dismissal.[29] While a court may receive evidence on a motion to dismiss in those limited circumstances, *see supra* note 22 and accompanying text, those circumstances are not present here. Therefore, because this pretrial motion raises factual questions that are interwov-

28. As part of the government's motion to reconsider dismissal of the charges, appellant provided two affidavits and other documents to establish facts connecting the bombing of the *MV Limburg* to hostilities with the United States, and the government asked for an evidentiary hearing. *See* App. 246-454. The military judge granted the request for reconsideration, but denied the request for an evidentiary hearing without explaining why the evidentiary hearing that featured so prominently in the dismissal of the charges should not be held, except to state that the prosecution had declined prior "opportunities ... to provide a factual basis for [its] assertion of subject matter jurisdiction over the charged offenses." App. 469-71. *See supra* note 4 and accompanying text.

29. The parties could stipulate to the facts, or the military judge could accept a full proffer to determine the nexus issue in a pretrial hearing, even if it is intertwined with a charged offense. *See United States v. Covington*, 395 U.S. 57, 60–61, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969) (holding that when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense," a defense is "capable of determination" and may be decided pretrial under Fed. R. Crim. P. Rule 12(b)(4) (citation and footnote omitted)).

en with the issues on the merits, resolution of those factual questions must be deferred until trial. *See United States v. Poulin*, 588 F.Supp.2d 58, 61 (D.Me.2008) (quoting *United States v. Russell*, 919 F.2d 795, 797 (1st Cir.1990)).

We hold as a matter of law that the military judge erred when he required appellant to offer evidence in a pretrial session on whether the offense was "committed in the context of and associated with hostilities" under 10 U.S.C. § 950p(c). The military judge's decision to set aside Specification 2 of Charge IV (Terrorism), Charge VII (Attacking Civilians), Charge VIII (Attacking Civilian Objects), and Charge IX (Hijacking or Hazarding a Vessel or Aircraft) is reversed, the charges are reinstated, and the case is remanded to the military judge for proceedings consistent with this decision.